IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:09cr80

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>vs. )<br>)<br>)<br>JEFFREY MICHAEL ROWE. )<br>_____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Government's Sealed Memorandum in Support of Order of Restitution [Doc. 30], filed July 1, 2010, and the Defendant's Memorandum of Law with Respect to 18 U.S.C. § 2259 [Doc. 32], filed July 8, 2010.

I.   BACKGROUND

On October 13, 2009, the Defendant Jeffrey Michael Rowe pled guilty pursuant to a plea agreement to one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The Defendant's sentencing was held on July 8, 2010. At the sentencing hearing, the Court deferred the issue of restitution so that the Court could consider the parties'

briefs on the issue. Neither party requested a further hearing on the matter.

Relevant to the issue of restitution, among the 243 images and 9 videos found in the Defendant's possession were images from what has come to be known as the "Vicky" series. "Vicky" is a pseudonym for a known child victim of child sexual abuse. Now an adult, Vicky has submitted loss figures for the Court's consideration in imposing restitution pursuant to 18 U.S.C. § 2259. Based on the victim's submissions, the Government contends that the Defendant in this matter should be held jointly and severally liable with all other defendants convicted of possessing images from the "Vicky" series for the full amount of Vicky's losses – a total of $383,803.60.[1]

## II. DISCUSSION

Section 2259 of Title 18 of the United States Code provides for restitution in all cases involving the sexual exploitation and abuse of children. Section 2259 mandates that the Court order a defendant

---

[1] To date, the victim has received $70,850.00 in restitution payments from other defendants. Therefore, the Government is requesting that the Court enter a restitution judgment in the amount of $312,953.60 for the identified victim in this matter.

convicted of such an offense to pay "the full amount of the victim's losses" as restitution to the victim. 18 U.S.C. § 2259(b)(1) and (4). "The mandatory nature of an award of restitution [under section 2259] is explicit and unwaivable." United States v. Brunner, No. 5:08cr16, 2010 WL 148433, at *1 (W.D.N.C. Jan. 12, 2010). The procedure for the issuance and enforcement of an award of restitution under section 2259 is governed by 18 U.S.C. § 3664. See 18 U.S.C. § 2259(b)(2).

Section 2259 defines a "victim" as an "individual harmed as a result of a commission of a crime under [chapter 110 of Title 18]." 18 U.S.C. § 2259(c). The statute further provides that the "full amount of the victim's losses" includes any costs incurred by the victim for:

> (A) medical services relating to physical, psychiatric, or psychological care;
>
> (B) physical and occupational therapy or rehabilitation;
>
> (C) necessary transportation, temporary housing, and child care expenses;
>
> (D) lost income;
>
> (E) attorneys' fees, as well as other costs incurred; and
>
> (F) any other losses suffered by the victim as a proximate result of the offense.

3

18 U.S.C. § 2259(b)(3). Section 2259 prohibits the Court from declining to issue an order of restitution due to the defendant's economic circumstances or because the victim has or is entitled to receive compensation through insurance or other sources. 18 U.S.C. § 2259(b)(4)(B).

The Government has the burden of proving the amount of the victim's losses and must do so by a preponderance of the evidence. 18 U.S.C. § 3664(e).

### A. Victim

The Court first must determine whether Vicky is a "victim" of the Defendant's offense within the meaning of section 2259. As noted above, section 2259 defines a "victim" as any "individual harmed as a result of a commission of a crime under [chapter 110 of Title 18]." 18 U.S.C. § 2259(c). The Defendant in the present case was convicted of a crime under this chapter, and it is undisputed that Vicky was depicted in some of the pornographic images that the Defendant possessed. Accordingly, Vicky is a "victim" for the purposes of section 2259 if she was "harmed as a result of" the possession of these images by the Defendant.

Courts have recognized that the distribution, receipt, and possession of child pornography creates at least three distinct types of harm to its victims. United States v. Planck, 493 F.3d 501, 505 (5th Cir. 2007); United States v. Paroline, 672 F.Supp.2d 781, 785-86 (E.D. Tex. 2009). First, as the Supreme Court has noted, "[t]he distribution of photographs and images depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children" because "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." New York v. Ferber, 458 U.S. 747, 759, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). The subsequent distribution and viewing of such images is injurious as well. "Like a defamatory statement, each new publication of the speech [causes] new injury to the child's reputation and emotional well-being." Ashcroft v. Free Speech Coalition, 535 U.S. 234, 249, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002).

Second, "[t]he possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy." United States v. Sherman, 268 F.3d 539, 547 (7th Cir. 2001); see also United States v. Norris, 159 F.3d 926, 930 (5th Cir. 1998) ("the mere existence of child pornography represents an invasion of privacy of the

child depicted"). "Possession of child pornography offends the victim's rights to privacy due to the inherently nonconsensual nature of the production and dissemination of the material." United States v. Church, -- F.Supp.2d --, 2010 WL 1270209, at *6 (W.D. Va. Apr. 5, 2010).

Third, courts have recognized that "the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials." Planck, 493 F.3d at 505 (quoting Norris, 159 F.3d at 930); Church, 2010 WL 1270209, at *7 ("The harm caused by possessors of child pornography in creating and sustaining a market for such material, in the aggregate, is quite clear."). "Thus, 'the victimization of a child depicted in pornographic materials flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography.'" Paroline, 672 F.Supp.2d at 786 (quoting Norris, 159 F.3d at 930).

The Government has presented evidence, through victim impact statements and psychiatrists' reports, evidencing the harm that Vicky suffered as a result of her abuse and exploitation. This evidence shows that Vicky was raped and sexually exploited by her father beginning at age

6

10. She was subjected to repeated acts of rape, bondage, sodomy and other abuse, which were photographed and videotaped and then shared with pedophiles and other consumers. As a result of the dissemination of these images, a subsequent child pornography viewer searched for Vicky. When this stalker eventually located Vicky (seven years after the original abuse), he harassed her with pointed sexual questions and requests to make pornography with her.

Vicky suffers from continuing injuries, including chronic post traumatic stress disorder, insomnia, eating disorders, chronic headaches and other problems, as a result of her abuse. Although now an adult, she has contemplated suicide. When Vicky finally was contacted by authorities and discovered the images were being disseminated, she had no idea and was devastated by the discovery:

> I had no idea the Vicky series, the child porn series taken of me, had been circulated at all until I was 17. My world came crashing down that day, and now, two years later, not much has changed. These past years have only showed me the enormity of the circulation of these images and added to my grief and pain. This knowledge has given me a paranoia. I wonder if the people I know have seen these images. I wonder if the men I pass in the grocery store have seen them. Because the most intimate parts of me are being viewed by thousands of strangers and traded around, I feel out of control. They are trading my trauma

> around like treats at a party, but it is far from innocent. It feels like I am being raped by each and every one of them.

[Victim Impact Statement, Ex. 2, Doc. 30-2 at 4].

Vicky's psychologist, Dr. Randall Green, opines that Vicky faces a long course of treatment for post traumatic stress disorder and other physical and emotional problems caused by the receipt, distribution and possession of her abuse images:

> As with most survivors of trauma, [Vicky] has had to deal with external or internal stimuli that trigger or reactivate memories about her abuse, about her image being viewed lustfully by many men throughout the world, or about the motives of men who might objectify women. The knowledge of the proliferation of her abuse through the internet has exponentially added to the types of triggers that can reactivate trauma-related thoughts or feelings. Even a look or gesture or touch by a male might, for example, instantly trigger an intense set of internal, and possibly external, reactions that are distressing and can bring her trauma immediately into the present.

[Psychological Examination Report, Ex.3 at 4-5, Doc. 30-3 at 5-6].

Based on the foregoing, the Court does not hesitate to conclude that Government has carried its burden of proving by a preponderance of the evidence that Vicky was harmed as a result of the Defendant's possession

of pornographic images of her as a child and thus qualifies as a "victim" within the meaning of section 2259.

B.  **Causation Requirement**

Having determined that Vicky is a "victim" within the meaning of section 2259, the Court next must determine whether the Government has met its burden of establishing the requisite causal connection between the Defendant's conduct and the victim's losses.

While the Fourth Circuit has yet to interpret section 2259, every Court of Appeals that has addressed the issue has concluded that section 2259 requires a showing that the victim's losses were suffered as a proximate result of the defendant's conduct. See In re Amy, 591 F.3d 792, 794 (5th Cir. 2009) ("Courts across the country have followed and applied the proximate-cause requirement in imposing restitution under Section 2259."); United States v. Searle, 65 F. App'x 343, 346 (2d Cir. 2003) (holding that "the district court reasonably concluded that the defendant's actions proximately caused the children's loss of their home and father"); United States v. Laney, 189 F.3d 954, 965 (9th Cir. 1999) ("Section 2259 ... incorporates a requirement of proximate causation [and] therefore requires a causal connection between the offense of conviction and the victim's

9

harm"); United States v. Crandon, 173 F.3d 122, 125 (3d Cir. 1999) ("[Section 2259] requires awarding the full amount of the victim's losses suffered as a proximate result of the offense."). Because of this requirement, the Court may award restitution under section 2259 only for the amount of Vicky's losses proximately caused by this particular Defendant's conduct. See Paroline, 672 F.Supp.2d at 791.

Proximate cause is "[a] cause that directly produces an event and without which the event would not have occurred." Black's Law Dictionary 250 (9th ed. 2009). The Fourth Circuit has stated that "[p]roximate cause is normally satisfied where there is a 'reasonable connection between the act or omission of the defendant and the damages which the plaintiff has suffered.'" Rux v. Republic of Sudan, 461 F.3d 461, 473 (4th Cir. 2006) (quoting W. Keeton et al., Prosser & Keeton on the Law of Torts 263 (5th ed. 1984)). Once proximate cause is established, the Court applies "a rule of reasonableness" in fashioning the amount of a restitution order. United States v. Doe, 488 F.3d 1154, 1160 (9th Cir. 2007). It is not required that the restitution amount be calculated with "mathematical precision." Id. An order of restitution under section 2259 will be upheld "if the district court is

able to estimate, based upon facts in the record, the amount of victim's loss with some reasonable certainty."  Id.

The possession of Vicky's abuse images by individuals such as the Defendant undoubtedly has inflicted psychological harm on her and has resulted in an invasion of her privacy, thereby further victimizing her.  See Norris, 159 F.3d at 930.  As noted by her psychologist, Vicky faces a long course of treatment for post traumatic stress disorder and other physical and emotional problems as a result of the distribution, receipt, and possession of her abuse images by pedophiles and other consumers of child pornography.  That being said, however, the Court cannot ignore the fact that a significant portion of the psychological harm inflicted upon Vicky -- as well as the entirety of the physical harm that she suffered -- was inflicted by her father, who not only committed the original abuse but also distributed photographs and videos of that abuse on the internet.  The harm caused to Vicky by her father's physical and sexual abuse obviously is distinct from the psychological harm inflicted by the untold numbers of individuals (including the Defendant) who subsequently received and possessed images of that abuse.  In light of these distinct injuries, it would be absurd to hold, as the Government suggests, the Defendant jointly and

severally liable for the entire amount of Vicky's damages. "A victim is not necessarily entitled to restitution for all of her losses simply because the victim was harmed and sustained some lesser loss as a result of a defendant's specific conduct." Paroline, 672 F.Supp.2d at 791.

It is beyond dispute that Vicky has suffered unimaginable harm and likely will continue to do so for the rest of her life. The only evidence presented by the Government to establish Vicky's losses, however, quantifies the total amount of damages incurred by her, with no distinction made between the physical and psychological harm suffered as a result of her initial abuse and the psychological harm she subsequently suffered as a result of untold numbers of strangers, including the Defendant, viewing and possessing her abuse images. While the Court has great sympathy for Vicky, the Court cannot "dispense with the requirement that the Government satisfy its burden of proving the amount of [her] losses proximately caused by [the Defendant's] possession of her [abuse] images." Paroline, 672 F.Supp.2d at 792-93. It is clear that 18 U.S.C. §3664(e) places on the Government the burden of proving what losses arose from the downloading and possession of the Vicky images, separate and apart from the losses caused to the victim by the abuse and the

creation of the images. Absent any evidence in the record that could be used to distinguish these losses and the amounts thereof the Court is simply unable to estimate the amount of Vicky's losses that can be attributed to the Defendant with any "reasonable certainty." Doe, 488 F.3d at 1160.

While the Court could attempt to quantify these distinct harms, the result would simply be an arbitrary and speculative figure. "To establish a record sufficient to ensure effective appellate review of its restitution orders, the Court must make 'explicit findings of fact' supporting its calculation of 'the full amount of the victim's losses,' as delineated in § 2259(b)(3), which were proximately caused by the Defendant's offense." Church, 2010 WL 1270209, at *16. Based upon the record, however, there is no evidence from which the Court reasonably could calculate the particular amount of losses proximately caused by the initial sexual abuse as well as the creation of the abuse images separate and apart from those particular losses proximately caused by the subsequent receipt and possession of these abuse images by individuals such as the Defendant.

Because the Government has failed to carry its burden of proving the amount of losses proximately caused by the Defendant's conduct with any

reasonable certainty, the Court must conclude that an award of restitution would not be appropriate in this case based upon the record before it. See Church, 2010 WL 1270209, at *16 (denying restitution upon finding "no evidence upon which the Court could reasonably calculate the measure of harm done to the victim proximately caused by the Defendant's conduct"); United States v. Woods, 689 F.Supp.2d 1102, 1112 (N.D. Iowa 2010) (denying restitution upon finding "no evidence in the record as to what losses were caused by Defendant's possession of her images"); Paroline, 672 F.Supp.2d at 792 (denying restitution where losses found to have been caused by both initial abuse and subsequent distribution of abuse images, but no effort was made by government "to show the portion of those losses specifically caused by [the defendant's] possession of [the victim's] two images").[2]

---

[2]In so holding, the Court in no way intends to imply that restitution would never be appropriate in a case involving the receipt and possession of child pornography. "Restitution in a possession case is not necessarily arbitrary or speculative, and given more information concerning losses proximately caused by Defendant's offense, a reasonable estimate may be possible." Church, 2010 WL 1270209, at *17 (citation and internal quotation marks omitted). The Court's ruling today also should not be construed as precluding the Government from seeking a restitution award in future cases based upon the joint and several liability of the possessors of a particular victim's abuse images. See 18 U.S.C. § 3664(h) (where more than one defendant has contributed to a victim's loss, "the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss").

## III. CONCLUSION

Upon careful review of all of the evidence, the Court is constrained to conclude that the Government has failed in the present case to meet its burden of proving the amount of losses to the identified victim proximately caused by the Defendant's conduct.

Accordingly, **IT IS, THEREFORE, ORDERED** that the Government's request for an order of restitution is **DENIED**.

**IT IS SO ORDERED.**

Signed: September 7, 2010

Martin Reidinger
United States District Judge